OPINION
{¶ 1} Plaintiff-appellant Ronald Taylor appeals the decision of the Belmont County Common Pleas Court, which found that a certain deed was properly acknowledged. The main issue is whether the decedent's signature on the deed was sufficiently acknowledged in front of the notary as required by R.C. 5301.01. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} Ralph Kemp and his deceased first wife had one son, Mr. Taylor, the appellant-executor herein. In 1992, Mr. Kemp married appellee Doris Pauline. She signed a prenuptial agreement waiving her right to all his property and estate.
 {¶ 3} In 1997 and 1998, Mr. and Mrs. Kemp asked the attorney who notarized their prenuptial agreement about ways to avoid probate and/or taxes. The attorney made several suggestions on this matter. They stopped in the attorney's office in 1999 to speak more about joint and survivorship deeds.
 {¶ 4} The Belmont County parcel, which is the subject of this appeal, would have to be surveyed in order to transfer the property to a revocable trust and estate taxes would still have to be paid. Mr. Kemp was very indecisive in his meetings with his attorney until his attorney lectured him to make a decision. Mr. Kemp then decided to transfer the parcel by joint and survivorship deed to himself and his wife to avoid probate, survey costs and estate taxes.
 {¶ 5} Thus, in May 2000, Mr. Kemp instructed his attorney to prepare deeds for the Belmont County property and another parcel in Warsaw, Ohio giving his wife joint and survivor rights. Upon being presented with the deeds, Mr. Kemp signed the Warsaw deed, but he told his attorney that he was not yet ready to sign the deed which would give Mrs. Kemp joint and survivor interest in his Belmont County property.
 {¶ 6} On September 12, 2000, Mr. and Mrs. Kemp entered the attorney's office to sign the deed to the Belmont County property. They signed in front of two of the attorney's employees, who signed as witnesses. One of the witnesses, who also acted as the notary public, signed the certification of acknowledgment that reads: {¶ 7} "STATE OF OHIO
 {¶ 8} "COUNTY OF HOLMES
 {¶ 9} "BE IT REMEMBERED, THAT on this 12th day of September 2000, before me, a subscriber, a Notary Public in and for said County, personally came, Ralph E. Kemp and Doris Pauline Kemp, the Grantors in the foregoing Deed, and acknowledged the signing thereof to be their voluntary act and deed.
 {¶ 10} "IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal this day and year aforesaid."
 {¶ 11} On September 19, 2000, Mr. Kemp entered the hospital. He died on September 26, 2000. Sometime thereafter, the Coshocton County Common Pleas Court found that Mrs. Kemp improperly obtained funds from her husband's account which was payable on death to his brother.
 {¶ 12} In the Coshocton County Probate Court, Mrs. Kemp was appointed administrator of her husband's estate; she listed herself as the sole next of kin and failed to disclose the prenuptial agreement. Thereafter, she was removed and then determined to have concealed assets of the estate. It was also alleged that she destroyed her husband's last will that named his son as the executor and sole beneficiary of his estate.
 {¶ 13} Mr. Taylor also presented arguments in the probate court concerning the Belmont County property. He contended that Mr. Kemp only transferred the property to Mrs. Kemp in order to create a constructive trust. However, the probate court found that Mr. Taylor failed to prove this by clear and convincing evidence and thus the Belmont County property was not considered an estate asset.
 {¶ 14} In May 2002, Mr. Taylor, as executor of his father's estate, filed the within complaint against Mrs. Kemp seeking to have the deed voided for a claimed lack of acknowledgment. He also named as defendants and potential interested parties, Karma Miller and Alan Bickel, Mrs. Kemp's children who were named as the two new transfer on death beneficiaries in the deed.
 {¶ 15} By agreed entry, the case was submitted to the court on the filings and documentary evidence without oral trial. Mr. Taylor presented evidence regarding all of Mrs. Kemp's wrongdoings since his father entered the hospital. He also relied on the notary's deposition testimony from the probate proceedings. The notary had been asked, "Do you recall asking the notary question as to whether they signed the document as a free and voluntary act?" She responded, "I don't think I did." Mr. Taylor thus concluded that there was no compliance with the acknowledgment requirements for a valid deed. He cited R.C.5301.01 which requires acknowledgment in front of a notary and the Uniform Recognition of Acknowledgments Act. In contemplation of the defendants' arguments, Mr. Taylor also urged that "the exception" to the statute set forth in a Supreme Court case was inapplicable because there was evidence here to the contrary of a knowing and voluntary signature.
 {¶ 16} In a February 23, 2005 judgment entry, the trial court quoted the notary's statement on the deed that the grantors came before her and acknowledged their signing was a voluntary act and deed. The trial court also quoted the Supreme Court's holding that "in the absence of some evidence to the contrary, one who signs his signature to a document in the presence of another thereby acknowledges his signing thereof to such other." WayneBuilding Loan Co. v. Hoover (1967), 12 Ohio St.2d 62, 66. The court then concluded that the deed was properly acknowledged.
 {¶ 17} Mr. Taylor timely sought findings of fact and conclusions of law, which the court released more than three months later. The court noted that Mr. Kemp signed in the presence of the notary. The court stated in part:
 {¶ 18} "The notary could not recall with certainty if she had verbally asked the Kemp's if they signed the document as their free and voluntary act. However, upon arriving, either separately or in unison, Mr. and Mrs. Kemp declared that they were ready to sign the second deed. (The Kemp's often spoke together because Mr. Kemp has a speaking disability [due to a tracheotomy].)"
 {¶ 19} The court found that Mr. Kemp's act of deciding he was not ready to sign in May just strengthens the inference that his act of signing in September was voluntary as he had more time to make a thorough decision. The court explained that evidence of Mr. Kemp's state of mind four days before he died and after he entered the hospital does not reflect on his act of signing the deed two weeks before. The court pointed out that the notary testified that Mr. Kemp appeared to her just as he always did and that no other evidence on Mr. Kemp's state of mind on the day he signed the deed was introduced. The court also found that Mrs. Kemp's later acts of dishonesty did not support an argument that Mr. Kemp's act of signing the deed on September 12, 2000 was involuntary. The court concluded that the situation fit into the Supreme Court's Wayne Building holding that the acknowledgment required in R.C. 5301.01 can be satisfied by signing in front of a notary in the absence of some evidence to contrary. The within appeal by Mr. Taylor [hereinafter appellant] followed.
 ASSIGNMENT OF ERROR {¶ 20} Appellant's sole assignment of error contends:
 {¶ 21} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO SET ASIDE A CERTAIN DEED FOR PROPERTY IN BELMONT COUNTY, OHIO EXECUTED BY RALPH E. KEMP ON SEPTEMBER 12, 2000."
 {¶ 22} Appellant urges that the trial court erred in failing to require acknowledgment in strict compliance with R.C. 5301.01. He states that this statute read in conjunction with the Uniform Recognition of Acknowledgments Act requires an oral declaration by the signing party that the execution is voluntary. He contends that he met his burden by presenting the notary's testimony that she did not think she asked if the signing was the product of a free and voluntary act.
 {¶ 23} Appellant complains that the trial court misapplied the Supreme Court's Wayne Building holding. He posits that the exception in that case is not to be blindly applied to all cases involving a faulty acknowledgement. He states that there was voluminous evidence causing the execution of the deed to be suspect and establishing "some evidence to the contrary" as stated in Wayne Building. He claims that it was not his burden to prove execution was involuntary; rather, he merely had to present some evidence to the contrary of an acknowledgment.
 STANDARD OF REVIEW {¶ 24} First, we must discuss our standard of review. Appellant claims that our standard of review is wholly de novo because the parties' stipulated to have the trial court decide the matter solely on the trial briefs and attachments in lieu of live testimony. However, this statement is incorrect.
 {¶ 25} Determinations of fact are given great deference, and questions of law are reviewed by a court de novo. Ohio Bell Tel.Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147. The fact-finder initially weighs the evidence, and we do not reverse this weighing absent a total lack of competent and credible evidence. C.E. Morris Co v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280 (judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence).
 {¶ 26} We often support the trial court's factual decisions, by noting that the trial court is in the best position to judge credibility by viewing voice inflection, demeanor, and gestures. See, e.g., Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Although this rationale may be inapplicable herein, we still do not arbitrarily substitute our judgment for that of the trial court on factual matters merely because the parties agreed to submit the case on documentary evidence. Besides credibility, there is also the trial court function of generally weighing the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, 230. Thus, even if the parties agree to waive an oral trial, we still review factual decisions weighing the evidence under the manifest weight of the evidence test.
 {¶ 27} De novo review will only be performed over the trial court's legal decisions and the trial court's application of the law to the facts at hand. See, e.g., State v. Scott (Sept. 28, 2001), 7th Dist. No. 99CA324, ¶ 17 (application of law to facts is subject to de novo review).
 LAW ANALYSIS {¶ 28} Pursuant to R.C. 5301.01(A), a deed shall be signed by the grantor and that signing shall be acknowledged by the grantor before a specified official, such as a notary public, who shall certify the acknowledgement and subscribe their name to the certificate of acknowledgement. Prior to February 1, 2002, this statute also required the signing to be acknowledged by the grantor in the presence of two witnesses, who had to attest the signing and subscribe their names to the attestation. Yet, R.C.5301.01(B) validates those deeds entered prior to the statute's new effective date even without acknowledgment before two witnesses who attest the signature, unless the signature was obtained by fraud.
 {¶ 29} Here, we have the grantor signing in the presence of two witnesses who also signed. We have a notary who certified an acknowledgment and subscribed her name to the certificate of acknowledgement. The issue is whether the grantor properly acknowledged his signing before the notary.
 {¶ 30} The Supreme Court was once faced with a case where a witness and the notary observed the executing parties sign their name on a mortgage. Wayne Building Loan Co. v. Hoover (1967),12 Ohio St.2d 62. No words were spoken regarding their signatures. Id. at 64. Besides signing in the notary's presence, the executing parties did nothing to indicate their acknowledgement. Id. at 65. The notary then executed a certificate of acknowledgment, which stated that the executing parties "acknowledged the signing of the foregoing conveyance to be their voluntary act and deed for the uses and purposes therein mentioned." Id. at 63-64. It was alleged by a subsequent lienholder that the mortgage lien was invalid or lacked priority because it had not been properly acknowledged before the notary as required R.C. 5301.01. Id. at 62-63.
 {¶ 31} The Supreme Court characterized the question in that case as "whether the mere signing in the presence of a notary public may amount to the acknowledgment required by Section5301.01, Revised Code." Id. at 65. The court opined that the answer to the question is dependent on the language of R.C.5301.01. Id. "Apart from that statutory section, the statutes of Ohio provide no guidance as to the meaning of the statutory words `signing * * * acknowledged by the * * * mortgagor * * * before * * * a notary public'." Id.
 {¶ 32} The Court noted that the statute required signature in front of witnesses but only acknowledgement by the notary. Id. Thus, the Court basically found that acknowledgement is merely indicating in some way that the signature was made by the proper executing party. Specifically, the Court concluded:
 {¶ 33} "The reasonable conclusion from these statutory provisions is that, where a witness has seen the signing, there has necessarily been an `acknowledgment' of such `signing' by the signer in his presence. Thus, it appears that the statute considers that one who witnesses a signing necessarily witnesses an acknowledgment of such signing. It follows that, where a notary public witnesses a signing by the mortgagor, there has been an acknowledgment of such signing before such notary public within the meaning of the words used in Section 5301.01, Revised Code." Id. at 65-66.
 {¶ 34} "In our opinion, in the absence of some evidence to the contrary, one who signs his signature to a document in the presence of another thereby acknowledges his signing thereof to such other." Id. at 66.
 {¶ 35} As aforementioned, appellant claims that this holding would not validate the acknowledgement in this case because there is "some evidence to contrary" of acknowledgement. And, appellees counter: (1) there was more than mere signing here; (2) that there was not "some evidence to the contrary" bearing directly on the decedent's act of signing that day; and (3) acknowledgment is irrelevant between the parties and their heirs.
 {¶ 36} It must be pointed out here that when Wayne Building
was decided, the Uniform Recognition of Acknowledgments Act had not been enacted. The Court expressly relied on the fact that no statutes defined acknowledgment. Id. at 65. The Uniform Recognition of Acknowledgments Act, contained in R.C. 147.51
through 147.58, was then enacted in the mid-1970's.
 {¶ 37} R.C. 147.53 is entitled, "Contents of acknowledgment" and provides that the person taking an acknowledgment shall certify that: (A) the person acknowledging appeared before her and acknowledged he executed the instrument; and (B) the person acknowledging was known to the person taking the acknowledgment, or the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.
 {¶ 38} R.C. 147.54 then provides that the form of a certificate of acknowledgment shall be accepted if it is in the form prescribed by laws of this state, if it conforms to the laws in the state where taken, or if it contains the words "acknowledged before me" or their substantial equivalent. R.C.147.55 provides statutory short forms that may be used by the notary and explains that the use of other forms is not prohibited.
 {¶ 39} R.C. 147.541 then defines the words "acknowledged before me" as follows:
 {¶ 40} "(A) The person acknowledging appeared before the person taking the acknowledgment;
 {¶ 41} "(B) He acknowledged he executed the instrument;
 {¶ 42} "(C) In the case of: (1) A natural person, he executed the instrument for the purposes therein stated; * * *
 {¶ 43} "(D) The person taking the acknowledgment either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate."
 {¶ 44} One can acknowledge that they executed the instrument under R.C. 147.541(B) by telling the notary that he already signed it or by merely signing it in front of the notary. Signing in front of a notary would acknowledge that he executed the instrument.
 {¶ 45} Thus, the main issue surrounds R.C. 147.541(C)(1). Although appellant's brief does not specify this section, he does direct this court to the entire act as a whole, citing R.C.147.51 — 147.58.
 {¶ 46} First, we note that R.C. 147.541(C)(1) states, "he executed the instrument for the purposes therein stated," rather than, "he acknowledged that he executed the instrument for the purposes therein stated." Cf. R.C. 147.541(B) (specifying, "[h]e acknowledged he executed the instrument"). Still, it is arguable whether a notarization could meet the definition of "acknowledged before me" if the executing party did not somehow indicate that he executed the instrument for the purposes therein stated. However, there is more evidence here than a mere signing. And, there is a complete misconstruction of appellant's sole fact upon which his case is based.
 {¶ 47} Contrary to appellant's argument, the specific content of the question asked of the notary in her deposition is unfavorable to his theory of the case:
 {¶ 48} "Q. Do you recall asking the notary question as to whether they signed the document as a free and voluntary act?"
 {¶ 49} "A. I don't think I did." (Depo. 14).
 {¶ 50} "Q. When you notarized it, you're not so sure you asked the question or anything about the voluntary signature?"
 {¶ 51} "A. Right." (Depo. 17).
 {¶ 52} Yes, the notary used an old form certification stating that the parties acknowledged the signing "to be their voluntary act and deed." And, she later testified that she did not think she asked if the signature was a free and voluntary act.
 {¶ 53} However, nothing in the statutes or case law requires the notary to ask if the grantor signed as a voluntary or free act. See Truman v. Lore's Lessee (1862), 14 Ohio St. 144. InTruman, the Supreme Court held that an official taking an acknowledgment is not required and is not empowered to determine and certify the grantor's capacity. Id. at 152. The Court presumed the official did not intend to do so merely by using the word "voluntary" in his certificate of acknowledgment. Id.
 {¶ 54} The notary's deposition was taken years before in the probate case, which may have revolved around different issues and for which counsel likely had different incentives underlying his questioning. Counsel in that case did not ask the notary if she asked Mr. Kemp if he signed the deed for the purposes stated therein or something similar thereto.
 {¶ 55} This notary prepared the deed for the Kemps when instructed to do so by the attorney back in May 2000. When asked if any discussion took place about why they did not sign the deed earlier, the notary responded "that they were ready to sign now." (Depo. 15). She could not answer which one of them made that statement. She did note that, on the day of the signing: Mr. Kemp seemed like he normally did; Mr. Kemp did not seem any worse; and she did not notice him having any trouble getting up and down the steps in the building.
 {¶ 56} Contrary to appellant's suggestion, an acknowledgement need not be oral. Appellant cites the Uniform Recognition of Acknowledgments Act in support of his claim that an oral declaration is required; however, nothing in those statutes leads to this conclusion. As appellees point out, such a rule would discriminate against those with speech impairments. In fact, Mr. Kemp was hard to understand as a result of a past tracheotomy.
 {¶ 57} Mr. Kemp instructed his attorney to draw up this deed four months before his signing after many months of discussion and consultation on the matter. The notary prepared the deed as instructed by the attorney in May 2000. After preparation and presentation, she witnessed Mr. Kemp sign a deed to another parcel and decide that he was not ready to sign the within deed to the Belmont County property. Mr. Kemp thereafter returned to the office for the purpose of executing this saved deed. He signed the deed in front of that same notary and witness. He engaged in this signing only after he and/or his wife declared in front of the notary that he may not have been ready to sign before, but he is ready to sign now. The trial court could reasonably find that appellant failed to meet his burden of establishing that Mr. Kemp's act of signing under the circumstances related above represents an insufficient acknowledgment.
 {¶ 58} We also note appellee's alternative argument. They urge that the Supreme Court in Wayne Building was referring to direct evidence bearing on the signing, such as intoxication or confusion at the time, not character flaws or subsequent acts of the beneficiary who was present at signing. And, even if the circumstantial evidence presented by appellant was acceptable as some evidence to the contrary of the grantor's intent, the Supreme Court never implied that mere presentation of some evidence requires judgment for the plaintiff. Rather, this was more of a burden of production, leaving the trial court to weigh the evidence to determine such intent. There is nothing here compelling us to disturb the decision of the primary fact-finder in this case.
 {¶ 59} We also refer to appellees' final alternative argument that regardless of the sufficiency of the acknowledgment, title would still pass to Mrs. Kemp. In support of this proposition, they quote from a Supreme Court case that was cited in WayneBuilding, Citizen's Nat. Bank in Zanesville v. Denison (1956),165 Ohio St. 89. In that case, mortgage holders were arguing over whose mortgage had priority, with one arguing that an acknowledgment on the other's lien was defective. It was determined that the notary public did not witness the wife's signature and the wife did not acknowledge her signature to the notary. The Court made the following observations on the purpose and effect of acknowledgments:
 {¶ 60} "The acknowledgment of a deed is required by statute chiefly for the purpose of affording proof of the due execution of the deed by the grantor, sufficient to authorize the register of deeds to record it. * * * A deed without acknowledgment, ordefectively acknowledged, passes the title equally with oneacknowledged, as against the grantor and his heirs; but withoutan effectual acknowledgment a deed can not be recorded so as toafford notice of the conveyance to all the world. Acknowledgmenthas reference, therefore, to the proof of execution, and not tothe force, effect, or validity of the instrument. * * * The validity of a deed at common law did not depend on its acknowledgment; and where acknowledgment is required, its object is the protection of creditors and purchasers." Id. at 94, quoting 7 Thompson on Real Property (Perm.Ed.), 416 (emphasis added).
 {¶ 61} The court continued: "A defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud." Id. at 95. According to the Supreme Court's dicta in Citizens, even a faulty acknowledgment would not per se invalidate the deed where the title issue is brought by a grantor or heirs. See id. See, also, Shoney's, Inc.v. Winthan Prop., Inc. (Dec. 13, 2001), 10th Dist. No. 01AP-145;Basler v. Multicare Co., Inc. (Nov, 19, 1999), 11th Dist. No. 98-G2-201; Seabrook v. Garcia (1982), 7 Ohio App.3d 167, 169
(9th Dist.).
 {¶ 62} Still, the Court recognized an exception to the validity of the defectively acknowledged deed between parties and their heirs. This exception would have been an available recourse to appellant. That is, he could have filed suit for fraud, undue influence or the like. Appellant did not plead fraud in the complaint and did not plead or establish undue influence except possibly by inference, which the trial court was permitted to disbelieve. Rather, appellant proceeded under the theory that the acknowledgment was insufficient in a non-facial manner and later, that he had "some evidence" to avoid the Supreme Court's holding that signing in front of the notary is sufficient acknowledgment. As we mentioned, none of that evidence bore directly on the act of signing and did not otherwise compel a holding in appellant's favor.
 {¶ 63} In conclusion, the trial court could reasonably conclude that appellant failed to prove that the acknowledgment was insufficient. Appellant did not plead fraud or make arguments concerning undue influence that could not be discredited by the fact-finder in weighing the evidence.
 {¶ 64} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.