[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. White v. Franklin Cty. Bd. of Elections,* Slip Opinion No. 2020-Ohio-524.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-524

THE STATE EX REL. WHITE ET AL. *v.* FRANKLIN COUNTY BOARD OF

ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it

may be cited as *State ex rel. White v. Franklin Cty. Bd. of Elections,* Slip

Opinion No. 2020-Ohio-524.]

*Elections—Mandamus—Validation of signatures on nominating petition—Writ of*

*mandamus sought to compel county board of elections to place candidate's*

*name on ballot—Writ denied.*

(No. 2020-0150—Submitted February 12, 2020—Decided February 14, 2020.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} Relators, Tiffany M. White and Tiffany White 4 the People (collectively, "White"), seek a writ of mandamus ordering respondents, the Franklin County Board of Elections and its members (collectively, "the board"), to place White's name on the March 17, 2020 primary ballot as a candidate for the

Democratic Party nomination for the office of state representative for the 25th Ohio House District. White asserts that the board abused its discretion by failing to validate three signatures on her nominating petition, leaving her one signature short of the required 50. Also before us is White's motion to strike the brief of amicus curiae Miranda Lange, to which Lange has filed a memorandum in opposition. We deny the writ and motion to strike.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} On December 18, 2019, White filed with the board her declaration of candidacy and nominating petition, which contained 89 signatures. She needed a minimum of 50 valid signatures to qualify for the ballot. R.C. 3513.05. The board initially determined that only 47 signatures were valid, including the signature of White, who signed her own petition as an elector and whose signature the board mistook for that of another person living at White's address. Among the signatures that the board rejected as invalid were those of Tiffany Harmon, Mark Smoot, Virginia Davis, Terry D. Rue, and Ronald Fitzgerald. On secondary review, the board determined that 50 of the signatures on White's petition were valid, including those of Davis and Fitzgerald (and including White's own signature as an elector, which the board had continued to mistake for someone else's signature). The board did not deem valid the signatures of Harmon, Smoot, and Rue. Because White's petition had met the minimum-signature requirement, the board certified her name to appear on the ballot.

{¶ 3} On January 3, 2020, Oscar L. Woods filed a written protest of the certification. Woods alleged that the signatures of Davis and Fitzgerald—which the board had initially deemed invalid but had deemed valid on secondary review— did not match the signatures on file and were therefore invalid. Woods further alleged that White's own signature as an elector could not be counted toward the total, citing the secretary of state's 2020 Ohio Candidate Requirement Guide, the secretary of state's Election Official Manual, and R.C. 3501.38(E)(1). At the

2

January 21 protest hearing, White submitted to the board what she purported were notarized affidavits from Harmon, Smoot, Davis, Rue, and Fitzgerald stating that their signatures on White's petition were genuine. The board denies that the documents were properly verified affidavits.

{¶ 4} The board denied Woods's protest as to the signatures of Davis and Fitzgerald but sustained it as to White's own signature, leaving her petition with only 49 valid signatures. It did not address her claims that the signatures of Harmon, Smoot, and Rue were also valid. On January 23, 2020, the board communicated to White that it had rescinded her certification and that her name would not appear on the ballot.

{¶ 5} On January 29, White filed this mandamus action. Her complaint does not challenge the board's decision on Woods's protest but instead asserts that the board abused its discretion by not deeming valid the signatures of Harmon and Smoot, which, if valid, would bring White's signature total to 51. (In her brief, she argues that the signature of Rue is also valid, bringing the valid-signature total to 52.) White seeks a writ ordering the board to place her name on the ballot.

## II. ANALYSIS

### A. Mandamus Standard

{¶ 6} White is entitled to a writ of mandamus if she establishes by clear and convincing evidence that (1) she has a clear legal right to have her name placed on the ballot, (2) the board has a clear legal duty to place her name on the ballot, and (3) she lacks an adequate remedy in the ordinary course of the law. *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 12. Because of the proximity of the March election, White lacks an adequate remedy outside this proceeding. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

{¶ 7} With respect to the remaining elements, we look to whether the board has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard

of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. White does not allege fraud or corruption, so the question is whether the board abused its discretion or clearly disregarded applicable law. A board abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

### B. Elector Authenticity

{¶ 8} White argues that the board abused its discretion when it rescinded her certification to the ballot after sustaining Woods's challenge to her own signature because the "sworn" statements that White obtained from Harmon, Smoot, and Rue established that their signatures are genuine. She argues that if those signatures are deemed to be valid, her petition contains 52 valid signatures—two more than the minimum number required. On this basis, she asserts a clear legal right to have her name recertified to the ballot and a clear legal duty on the part of the board to do so under R.C. 3513.05.

{¶ 9} The board responds that the documents White obtained are unsworn statements, not sworn affidavits, and that the purported signatures of Harmon, Smoot, and Rue on those statements have not been verified through comparison with those electors' voter-registration forms. The board argues that the unsworn statements are therefore insufficient to confirm that Harmon, Smoot, and Rue actually signed the statements and, ultimately, are insufficient to show that they signed White's petition. The board therefore denies that White has a clear legal right to ballot access and denies that it has a clear legal duty to certify her name to the ballot. We conclude that the board is correct.

{¶ 10} A board of elections has a duty to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers." R.C. 3501.11(K). "As part of that duty, boards must compare petition signatures with voter-

registration cards to determine if the signatures are genuine." *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 17. In this case, the board compared the petition signatures with the voter-registration signatures and determined that the petition signatures purporting to be those of Harmon, Smoot, and Rue were not genuine.

{¶ 11} When a petition signature does not match the one on the signer's voter-registration form but the board determines that the signature is nonetheless genuine, the board abuses its discretion if it invalidates the signature for not matching the one on file. *Georgetown v. Brown Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2019-Ohio-3915, ___ N.E.3d ___, ¶ 23-25, citing *State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 144 Ohio St.3d 346, 2015-Ohio-4097, 43 N.E.3d 406, ¶ 11, and *Scott* at ¶ 19. "Although the caselaw speaks in terms of establishing whether a *signature* is genuine, * * * the duty of the boards of elections is to establish the authenticity of the *elector*, not the signature." (Emphasis sic.) *Id.* at ¶ 24.

{¶ 12} The facts in *Scott*, *Crowl*, and *Georgetown* involved print/cursive mismatches, i.e., situations in which an elector signed the petition in print but the signature on file was in cursive, or vice versa. *See Georgetown* at ¶ 22-24. In each of those cases, there had been evidence sufficient to establish that the electors in question had actually signed the petition. *Id.* at ¶ 14, 23-25. In *Scott*, there had been uncontroverted, sworn hearing testimony from the petition circulator and the elector that the elector had signed the petition. *Scott* at ¶ 7; *see also State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 10th Dist. Franklin No. 14AP-197, 2014-Ohio-1395, 10 N.E.3d 776, ¶ 6 (testimony was given under oath). And in *Crowl*, the relator had submitted sworn affidavits from the electors attesting that the signatures that had been rejected as "not genuine" were in fact genuine. *Crowl* at ¶ 4.

{¶ 13} By contrast, in this case, the board is correct that the documents at issue are not sworn affidavits and are instead unsworn statements. "An affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites. A paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit." *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238, 657 N.E.2d 1345 (1992) (purported affidavit omitting jurat of notary public or other official authorized to administer oath or affirmation was not an affidavit); *see also* R.C. 2319.02 ("An affidavit is a written declaration under oath"). The documents at issue here bear the notary public's stamp, but not her signature, and they contain no jurat of the notary public nor any other indication that the declarants had sworn to their statements or that they made their statements under oath. *See* R.C. 147.04; R.C. 147.542.

{¶ 14} White argues in response that it does not matter if the statements were unsworn because in *Georgetown*, unsworn statements were used to establish the validity of petition signatures that did not match the voter-registration signatures on file. However, this argument overlooks the fact that in *Georgetown*, the record also contained the relevant electors' voter-registration forms, and the board had voluntarily compared the signatures on the *unsworn statements* with the signatures on the voter-registration forms and determined that those signatures were consistent, thereby verifying the authenticity of the electors. *Georgetown*, ___ Ohio St.3d ___, 2019-Ohio-3915, ___ N.E.3d ___, at ¶ 14.

{¶ 15} White points to no authority imposing on the board a clear legal duty to make the comparison between the signatures on the unsworn statements and those on the voter-registration forms that the board in *Georgetown* undertook voluntarily. Moreover, she does not seek the relief that would inure if such a duty existed, i.e., a writ ordering the board to compare the signatures on the unsworn statements with the signatures on the voter-registration forms. Rather, the relief

White seeks in this action is a writ ordering the board to certify her name directly to the ballot.

{¶ 16} The record before us contains neither sworn testimony that Harmon, Smoot, and Rue signed the petition nor voter-registration forms against which the signatures on the unsworn statements can be compared to establish the authenticity of those electors. We conclude that White has failed to establish by clear and convincing evidence that the three disputed petition signatures are genuine or that the board abused its discretion in rejecting them. *See State ex rel. Heavey v. Husted*, 152 Ohio St.3d 579, 2018-Ohio-1152, 99 N.E.3d 372, ¶ 7, 10-11 (because the record did not contain the voter-registration records, relators could not prove the reason that the signatures were rejected). And therefore, she has not established a clear legal right to have her name placed on the ballot. *Id.* (because relators failed to present clear and convincing evidence of erroneously rejected signatures, they failed to show a clear legal right to be certified to the ballot).

### C. Printed Signature

{¶ 17} White asserts that the board rejected Harmon's signature solely because it was printed, not written in cursive. She makes this claim on the basis of a petition-review report produced by the board that indicates "PS – Printed Signature" next to Harmon's name. Electors' signatures do not have to be written in cursive—they may be printed. R.C. 3501.011. Therefore, a blanket disqualification of printed signatures would be an abuse of discretion. *Georgetown*, ___ Ohio St.3d ___, 2019-Ohio-3915, ___ N.E.3d ___, at ¶ 20-21. *Accord State ex rel. Auken v. Blackwell*, 10th Dist. Franklin No. 04AP-952, 2004-Ohio-5355, ¶ 19. Because White is one signature short of the minimum, if Harmon's signature were to be deemed valid, White would be entitled to relief.

{¶ 18} However, the board asserts—and its manager of petitions and campaign finance, Jeffrey O. Mackey, attested in a sworn affidavit—that Harmon's petition signature had been invalidated because it did not match the signature on

Harmon's voter-registration form. White attacks Mackey's affidavit as not establishing that it had been made on personal knowledge. But Mackey's affidavit states his position as manager of petitions and avers that the statements it contains are made from his personal knowledge. This was sufficient to demonstrate Mackey's personal knowledge of the reasons that the petition signatures had been rejected.

{¶ 19} In any event, as in *Heavey*, Harmon's voter-registration form is not in evidence. White has therefore failed to establish by clear and convincing evidence that the board rejected Harmon's signature under a mistaken belief that printed signatures are invalid per se and not because there was a print/cursive mismatch between the petition signature and the signature on Harmon's voter-registration form. *See Heavey*, 152 Ohio St.3d 579, 2018-Ohio-1152, 99 N.E.3d 372, at ¶ 10. As explained above, in the absence of evidence establishing the elector's authenticity, evidence that is lacking here, a board does not abuse its discretion by rejecting a petition signature that is inconsistent with the signature on the elector's voter-registration card. White has therefore not established that the signature was improperly invalidated and thus that she has a clear legal right to have her name appear on the ballot. *See id*. at ¶ 7.

### D. Motion to Strike

{¶ 20} White has moved to strike the merit brief of amicus curiae Miranda Lange, arguing that amici may not file merit briefs in original actions without leave of court. White is incorrect: "[A]n amicus curiae may file a merit brief in an original action without leave of court." *State ex rel. Duke Energy Ohio, Inc. v. Hamilton Cty. Court of Common Pleas*, 126 Ohio St.3d 41, 2010-Ohio-2450, 930 N.E.2d 299, ¶ 11; *see also* S.Ct.Prac.R. 12.07(A) and 16.06(A). White further argues that the amicus brief "raises false issues, causes confusion, and serves no purpose." However, she does not cite any authority for striking the brief on those grounds. And her motion includes substantive rebuttals to the points in the amicus

brief that she disputes, thus diminishing any possible confusion. We deny the motion to strike.

### III. CONCLUSION

{¶ 21} Based on the foregoing, we deny the writ and motion to strike.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents and would grant the writ.

—————————————

Fitrakis & Gadell-Newton, L.L.C., Robert J. Fitrakis, and Constance A. Gadell-Newton, for relators.

Ronald J. O'Brien, Franklin County Prosecuting Attorney, and Timothy A. Lecklider and Nick A. Soulas Jr., Assistant Prosecuting Attorneys, for respondents.

McTigue & Colombo, L.L.C., J. Corey Colombo, Donald J. McTigue, Derek S. Clinger, and Ben F.C. Wallace, urging denial of the writ for amicus curiae, Miranda Lange.

—————————————