**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Porteous v. Franklin Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-939.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-939

THE STATE EX REL. PORTEOUS *v.* FRANKLIN COUNTY BOARD OF ELECTIONS

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Porteous v. Franklin Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-939.]**

*Elections—Mandamus—Validation of signatures on nominating petition—Would-be candidate failed to show that board of elections abused its discretion in refusing to certify his name for placement on primary-election ballot or that board had duty to reconsider its decision at a public meeting or hearing—Writ denied.*

(No. 2025-0354—Submitted March 17, 2025—Decided March 19, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ.  BRUNNER, J., did not participate.

**Per Curiam.**

**{¶ 1}** In this expedited election case, relator, Densil Porteous, seeks a writ of mandamus ordering respondent, the Franklin County Board of Elections, to place his name on the May 5, 2025 primary-election ballot for the office of Columbus City Council member for the Seventh District. In the alternative, he seeks a writ of mandamus ordering the board to hear his request for reconsideration at a public meeting or hearing.

**{¶ 2}** Because Porteous has failed to show that the board abused its discretion in refusing to certify his name for placement on the May 6, 2025 primary-election ballot or that the board had a duty to reconsider its decision at a public meeting or hearing, we deny the writ.

## I. FACTUAL BACKGROUND

### A. The board has a duty to verify nominating petitions

**{¶ 3}** A petition of a candidate for the office of Columbus City Council member must be signed by at least 250 registered electors of the district for which the candidate seeks nomination. Columbus City Charter, *Nomination of municipal officers*, § 41-3(a)(2), https://library.municode.com/oh/columbus/codes/code_of_ordinances?nodeId=CHTR_THECICOOH_EL_S41-3NOMUOF (accessed March 18, 2025) [https://perma.cc/32EL-ZTQ3]. The board has the duty to "[r]eview, examine, and certify the sufficiency and validity of" the nominating petition, R.C. 3501.11(K)(1). Because each signature must represent a person who may validly vote for the petitioning candidate, the board must invalidate a signature whenever it cannot authenticate that signature. *See State ex rel. Mann v. Delaware Cty. Bd. of Elections*, 2015-Ohio-718, ¶ 13 ("boards must compare petition signatures with voter-registration cards to determine if the signatures are genuine").

**{¶ 4}** One reason to doubt the genuineness of a signature is if it does not match the legal mark on file with the board of elections for the registered voter. *See id.* In general, the style of a voter's legal mark does not matter. R.C. 3501.011(B).

2

But a signature on a nominating petition must match "the mark of that elector as it appears on the elector's voter registration record." R.C. 3501.011(C). So to fulfill its duty to verify that the signatures on a nominating petition are valid, the board is "'required to compare petition signatures with voter registration cards to determine if the signatures are genuine.'" *State ex rel. Heavey v. Husted*, 2018-Ohio-1152, ¶ 10, quoting *State ex rel. Yiamouyiannis v. Taft*, 65 Ohio St.3d 205, 209 (1992).

{¶ 5} In comparing signatures, boards of elections have broad, but not boundless, discretion to judge signatures based on subtle differences. *See Mann* at ¶ 14-16 (a county board of elections did not abuse its discretion when it rejected a signature that contained a different number of strokes to make an "R" and when it rejected a signature that began with a cursive leading "S" rather than the printed leading "S" used on the voter-registration cards.); R.C. 3513.01. In sum, the General Assembly has given county boards of elections discretion to match petition signatures to the signatures in voter-registration records to ensure that they are genuine.

**B. The board rejected Porteous's petition and plea for reconsideration**

{¶ 6} On February 3, 2025, Porteous filed a declaration of candidacy with the board, asking that the board include his name on the May 6, 2025 primary-election ballot for the Democratic Party. Along with the declaration, Porteous submitted a petition containing approximately 332 signatures.

{¶ 7} The board determined that only 230 signatures were valid. Porteous's petition therefore fell 20 signatures short of the city's 250-signature requirement. The board decided at a public meeting that Porteous did not qualify to have his name on the ballot. It notified Porteous of its decision on February 14.

{¶ 8} The same day, Porteous emailed the board requesting reconsideration of its decision. In his email, Porteous recognized that he had only 230 valid signatures on his petition, and he expressed his intent "to secure more than 20 signatures so that [his] candidacy [could] be validated." By that time, however, the

deadline for submitting nominating petitions for the May 6, 2025 primary election had passed.

**{¶ 9}** Having received no answer from the board to his first email, he followed up with the board in a second email on February 27. In that email, Porteous raised for the first time his belief "that certain signatures may have been wrongly invalidated." He asserted that he was "prepared to provide proof from signers confirming that they [had] personally signed [his] petition," but he did not attach any such proof to his email. He also asked for assurance that the verification process the board had applied when reviewing his petition was consistent with the standards it used for "all candidates seeking ballot access."

**{¶ 10}** Later that day, the board's director responded to Porteous, advising that the board's "review and verification of [Porteous's] petition signatures was consistent with the standards promulgated by the Ohio Secretary of State and consistent with all candidates seeking ballot access." The director informed Porteous that his request for reconsideration was denied. Porteous then requested reconsideration at a public meeting. He asked the board's permission to present "supporting information" that some signatures may have been invalidated "based on clerical inconsistencies rather than voter intent." Nothing in the record indicates that Porteous attached such "supporting information" to any of his emails to the board.

**{¶ 11}** On February 28, Porteous hand-delivered a letter to the board reiterating his request for reconsideration at a public hearing. Porteous alleges that he appended 22 written statements to this letter. Although he styled these statements as affidavits, they were not sworn before an officer of the court and affixed with the officer's seal. Each statement was signed, allegedly by a person whose signature the board struck from Porteous's nominating petition as not genuine. The board admits that it struck the signatures alleged to belong to 21 of these 22 individuals as not genuine.

**{¶ 12}** Porteous asserts that he has a clear legal right to have his name placed on the ballot because these 21 statements prove that his petition contained a total of 251 valid signatures—one more than he needs for his name to be placed on the ballot. In the alternative, he asserts that he has a right to have his request for reconsideration considered at a public meeting or hearing and that the board has a duty to hold a reconsideration hearing based on its past practice of allowing others the opportunity to present similar cases at a public hearing. He asks that we order the board either to place his name on the May 6, 2025 primary-election ballot or grant him a public hearing for reconsideration.

**{¶ 13}** Because this case was filed on March 11, 2025, and relates to the May 6, 2025 primary election, it is classified as an expedited election case. *See* S.Ct.Prac.R. 12.08. We sua sponte issued an order further expediting the answer and briefing schedule. 2025-Ohio-824.

## II. ANALYSIS

**{¶ 14}** To be entitled to a writ of mandamus, Porteous must establish that he has a clear legal right to his requested relief, that the board has a corresponding clear legal duty to provide that relief, and that he has no adequate remedy in the ordinary course of law. *State ex rel. White v. Franklin Cty. Bd. of Elections*, 2020-Ohio-524, ¶ 6. It is Porteous's burden to establish that he is entitled to a writ of mandamus by clear and convincing evidence. *See State ex rel. Miller v. Union Cty. Bd. of Elections*, 2023-Ohio-3664, ¶ 15. When there is conflicting evidence about a factual determination made by a board of elections, we will not substitute our judgment for the board's. *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 2017-Ohio-8115, ¶ 19. Because the May 6, 2025 primary election is imminent, Porteous lacks an adequate remedy in the ordinary course of law. *See Heavey*, 2018-Ohio-1152, at ¶ 6.

**{¶ 15}** Porteous first asserts that he has a right to have his name placed on the ballot. He claims the board has a duty to rescind its decision that he has not

provided enough valid signatures on his nominating petition and that since he has provided written statements that verify that the 21 nonmatching signatures are in fact authentic, the board abused its discretion by refusing to place his name on the ballot. Porteous therefore must show that the board "'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions,'" *Husted*, 2009-Ohio-5327, at ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 2002-Ohio-5923, at ¶ 11, by not including his name on the ballot.

**{¶ 16}** Porteous alleges that the board abused its discretion and acted in clear disregard of the applicable law when it failed to certify his name for placement on the ballot. Since Porteous was short 20 signatures after the board struck the nonconforming signatures, he must prove that the board abused its discretion and acted in clear disregard of the law when it invalidated those signatures.

**{¶ 17}** The board's director attests that the board declared certain signatures on Porteous's nominating petition to be not genuine after comparing them to "all signatures on file" for those electors. Porteous does not contend that any of the contested signatures on his petition matched the signatures on the voter's corresponding registration records. In fact, he admits that these 21 petition signatures do not match the signatures on the registration records. Rather, he argues that the board's job is to verify electors by means of the signatures, not to certify the signatures themselves. Because, he claims, he has provided another means by which to verify the signatures—the 21 unsworn statements—the board should verify them.

**{¶ 18}** We have held that the goal of signature comparison is not to police signatures but to confirm the authenticity of the electors who signed the petition. *See Georgetown v. Brown Cty. Bd. of Elections*, 2019-Ohio-3915, ¶ 24. Boards of elections first determine signature authenticity based on comparisons. And the General Assembly requires boards of elections to consider authenticity based only on this comparison: the signature that "a person is required . . . to affix . . . to a . . .

6

nominating petition," R.C. 3501.011(A), must be "the mark of that elector as it appears on the elector's voter registration record," R.C. 3501.011(C).

{¶ 19} Further, we have held that there is no statutory requirement that boards of elections conduct an evidentiary hearing to afford a challenger an opportunity to contest a board's invalidation of petition signatures. *State ex rel. Tjaden v. Geauga Cty. Bd. of Education*, 2024-Ohio-3396, ¶ 31; *see also White*, 2020-Ohio-524, at ¶ 14. And while boards of elections sometimes choose to verify the authenticity of signatures that do not match the signatures on file by accepting extrinsic evidence that would-be candidates timely provide—such as sworn statements, *State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 2015-Ohio-4097, ¶ 4; unsworn statements, *Georgetown* at ¶ 13; or live testimony, *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 2014-Ohio-1685, at ¶ 7—they are not required to do so. If a board deems the extrinsic evidence sufficient to find that the mismatched signatures on the petition belong to those electors, it abuses its discretion if it disregards that evidence. *Georgetown* at ¶ 25. A board of elections also abuses its discretion if it admits that the signatures are valid after considering extrinsic evidence but still denies the would-be candidate a place on the ballot. *Crowl* at ¶ 11.

{¶ 20} In this case, Porteous presents as evidence unsworn statements allegedly signed by the petition's signatories, which he contends the board should accept as proof that the signatures on the petition are genuine. But though he styles these statements as affidavits and swears that he personally witnessed each signature on these statements, a statement that has not been sworn before an officer of the court and affixed with the officer's seal is not an affidavit. *See White* at ¶ 13. Because these written statements are unsworn, they have limited evidentiary value.

{¶ 21} Porteous does not contest that the written statements are unsworn. Rather, he argues that despite their being unsworn, these statements may be relied on to bridge the gap between the initial signatures on his petition and the voter-

registration records.  He expects us or the board to compare the signatures on his petition with the signatures on the unsworn statements, then compare the signatures on the unsworn statements with the signatures in the respective voters' registration records.  But no legislative authority imposes on the board a "legal duty to make the comparison between the signatures on the unsworn statements and those on the voter-registration forms," *id.* at ¶ 15.  The board may choose to conduct this additional comparative exercise, *see, e.g.*, *Georgetown* at ¶ 14, but it can choose to forego such a review without abusing its discretion.

**{¶ 22}** In some instances, we have found that a notarized affidavit or other sworn statement can cure a nonmatching signature between a nominating petition and voter-registration petition and that a board of elections abused its discretion by refusing to heed such testimony and certify the corresponding petitions.  *See, e.g.*, *Crowl*, 2015-Ohio-4097, at ¶ 4, 11.  This is not such a case.  Providing unsworn statements from signatories is not enough for us to overlook the discretion that the General Assembly gives boards of election in verifying signatures to certify nominating petitions.  The unsworn statements Porteous presents are not enough to prove by clear and convincing evidence that the board abused its discretion when it found the signatures to be inauthentic.

**{¶ 23}** Porteous argues in the alternative that he has a right to a public hearing before the board and that the board has a duty to grant him one.  We have held that "courts cannot create the legal duty that is enforceable in mandamus; the creation of [an enforceable duty] is a legislative and not a judicial function." *State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 2012-Ohio-4837, ¶ 31.  So Porteous must identify some legislative authority that requires the board to grant him a hearing.  Porteous has identified no such authority.  And we have recently reaffirmed that no such statutory duty exists.  *See Tjaden*, 2024-Ohio-3396, at ¶ 31.

**{¶ 24}** Porteous claims that the board has granted hearings in similar circumstances, so the board's refusal to grant him one constitutes both a due-

8

process and equal-protection violation. He is mistaken. This mandamus action provides the process Porteous is due. *See State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 24. And Porteous has failed to identify situations in which a similarly situated person received more favorable treatment by the board, defeating any equal-protection claim. *See In re Adoption of Y.E.F.*, 2020-Ohio-6785, ¶ 27.

**{¶ 25}** Porteous was missing 20 signatures; the only two cases he identified in which the board granted a reconsideration hearing were those in which the would-be candidate was missing a single signature. The board's director submitted sworn testimony that the board grants reconsideration hearings only if the would-be candidate lacks a single signature. Missing 20 signatures in the context of a timely hearing process while the board is busy preparing for an impending election is legally distinct enough from missing a single signature to justify the board's internal policy. As Porteous failed to identify any person outside of this parameter whom the board afforded a public hearing reconsideration, his argument that the board is treating him differently than a similarly situated person fails.

### III. CONCLUSION

**{¶ 26}** Porteous has failed to show that the board abused its discretion or acted in clear disregard of the law when it refused to place his name on the May 6, 2025 primary-election ballot as a candidate for Columbus City Council member in the Seventh District or that the board abused its discretion or acted in clear disregard of the law when it denied his request for a public hearing for reconsideration. We therefore deny the writ.

Writ denied.

––––––––––––––––––

Brunner Quinn and Patrick M. Quinn, for relator.

Shayla D. Favor, Franklin County Prosecuting Attorney, and Brian Zagrocki, Assistant Prosecuting Attorney, for respondent.

––––––––––––––––––